UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOMARCUS PORTER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1127-JVM** |
| **CODY MITCHELL, ET AL.** | |

## ORDER

Before the Court, on consent of the parties under the authority of 28 U.S.C. § 636(c), is a Motion for Summary Judgment filed by defendants Cody Mitchell, Jules Hebert, Connor Holmes, Dillon Tyne and Truly Dillon.[1] Plaintiff Tomarcus Porter filed a response, a supplemental response and a second supplemental response in opposition to the motion.[2] Having considered the memorandum, the record, and the applicable law, defendants' motion for summary judgment is granted.

### I.  Background

Tomarcus Porter, a state inmate, filed this *pro se* and *in forma pauperis* civil action under 42 U.S.C. § 1983.[3] Porter claims that, during an incident on April 19, 2024 at Rayburn Correctional Center, defendants "retaliated" against him and subjected him to excessive force.[4] Specifically, he claims that he was sprayed with a chemical agent, kicked, slapped and punched.[5] Porter asserts that the incident resulted in a "busted" ear drum, a swollen right rib, a split lip and a headache.[6] Porter did not seek monetary damages, but rather sought to be transferred to the state hospital for a 90-day evaluation for mental distress.[7]

---

[1] Rec. Doc. 44.
[2] Rec. Docs. 47, 49, and 50.
[3] Rec. Doc. 1.
[4] Id. at 5-6.
[5] Id. at 5.
[6] Id.
[7] Id. at 7. Sometime after he filed his complaint, Porter was transferred to David Wade Correctional where he is currently housed. Rec. Doc. 17.

## II.     Standard of Law

Summary judgment is appropriate if a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when its resolution might affect the case's outcome under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" S. Ins. Co. v. Affiliated FM Ins. Co., 830 F.3d 337, 343 (5th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts resolve factual controversies in favor of the nonmoving party. An actual controversy, however, exists only "when both parties have submitted evidence of contradictory facts." Guillot ex rel. T.A.G. v. Russell, 59 F.4th 743, 750 (5th Cir. 2023) (quotation omitted). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517 (5th Cir. 2012) (quoting Anderson, 477 U.S. at 248).

Summary judgment is proper when… "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–23. Once the moving party shows "that there is an absence of evidence to support the non-moving party's cause," the nonmoving party must come forward with "specific facts" showing a genuine factual issue for trial. TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)(citing Celotex, 477 U.S. 317 at 325). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "Conclusional

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Id. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact of required by Rule 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). In addition, the Court's Local Rules provide: "Any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." Local Rule 56.2.[8]

Further, summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4). Statements made by affiants without personal knowledge are not capable of being presented in an admissible form at trial. D'Onofrio v. Vacation Publications, Inc., 888 F.3d 197, 208 (5th Cir. 2018) (holding that statements in affidavits that amount to legal conclusions or statements made without personal knowledge are not capable of being presented in a form that would admissible in evidence); see also McWhirter v. AAA Life Ins. Co., 622 F. App'x 364, 366 (5th Cir. 2015) (holding affidavit based on witness's belief rather than personal knowledge is insufficient summary judgment evidence).

A nonmoving party's mere subjective belief fails to establish that there is a genuine issue as to any material fact. Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 419 n.54 (5th Cir. 2011); Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007). While the Court may not evaluate evidence on a motion for summary judgment, it may determine the "caliber or quality" of evidence as part of its determination whether sufficient evidence exists for the factfinder to find for the nonmoving

---

[8] Although Porter is proceeding in this matter *pro se*, he is nevertheless still bound by this Local Rule.

party. Anderson, 477 U.S. at 254. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517 (5th Cir. 2012) (quoting Anderson, 477 U.S. at 248).

### III. Analysis

Defendants seek summary judgment because Porter failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[9] Defendants assert that Porter admits in his complaint that he never initiated a grievance related to April 19, 2024 incident, and, as a result, he could not have pursued the grievance remedy to conclusion.[10]

Porter appears to contend that defendants' motion is premature because it was filed when he was still conducting discovery.[11] He also seems to argue that defendants somehow waived the exhaustion defense. Additionally, Porter asserts that he was not required to exhaust his administrative remedies due to the existence of an "emergency situation."[12]

Initially, it would not be premature for the Court to address defendants' motion for summary judgment. Porter had an adequate opportunity to conduct discovery before the July 7, 2025 discovery deadline.[13] The dispositive motion deadline was August 1, 2025.[14] Defendants timely filed their motion for summary judgment on August 1, 2025, after the close of discovery, in accordance with the Court scheduled deadlines.[15] The Court recognizes that Porter filed a motion to compel and "stay" discovery on July 14, 2025, claiming that defendants had not responded to his written discovery requests.[16]

---

[9] Rec. Doc. 44-2.
[10] Id. at 2-3, 6-7; Rec. Doc. 44-1 at ¶ 6-7.
[11] Rec. Doc. 47 at 1-2; Rec. Doc. 49 at 2.
[12] Id. at 2.
[13] Rec. Doc. 37 at 2.
[14] Id.
[15] Rec. Doc. 44.
[16] Rec. Doc. 40.

Defendants responded that they had never received Porter's discovery requests and they were unaware of them until Porter filed his motion.[17] Defendants further advised that, after they became aware of the discovery requests, they sent their responses to Porter on August 1, 2025.[18] The Court subsequently denied Porter's motion.[19] Notably, none of the interrogatories propounded by Porter nor the request for production of documents related to the issue of exhaustion of administrative remedies.[20] Nonetheless, after receiving the discovery responses, Porter filed a supplemental response to the motion for summary judgment again seemingly claiming that summary judgment is premature although discovery is closed.[21] For these reasons, the Court does not find defendants' motion for summary judgment to be premature.

Porter's claim that defendants waived the exhaustion defense is also rejected. It is true that a defendant's failure to assert the affirmative defense of exhaustion at the proper time can result in waiver of the defense. Giles v. Gen. Elec. Co., 245 F.3d 474, 491–92 (5th Cir. 2001). Here, however, defendants raised the affirmative defense of exhaustion in their answer to Porter's complaint.[22] Defendants specifically stated "he failed to exhaust administrative remedies available of the Prison Litigation Reform Act. Pursuant to 42 U.S.C. § 1997e, Plaintiff is barred from recovery under 42 U.S.C. § 1983 until such administrative remedies are exhausted."[23] Accordingly, defendants did not waive their affirmative defense of exhaustion.

The Court now turns to defendants' claim that Porter failed to exhaust administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

---

[17] Rec. Doc. 46 at 1-2.
[18] Id. at 2.
[19] Rec. Doc. 48.
[20] See Rec. Doc. 46-1.
[21] Rec. Doc. 49 at 2.
[22] Rec. Doc. 33 at 2 ¶ 2.
[23] Id.

5

are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Clifford v. Gibbs, 298 F.3d 328, 329 (5th Cir. 2002)(citing Porter v. Nussle, 534 U.S. 516 (2002)).

Exhaustion of administrative remedies is essentially a condition precedent to bringing suit. Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012). Administrative remedies are not exhausted unless a prisoner pursued his grievance through the conclusion of *all* steps of the administrative remedy procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001) (affirming dismissal of case where prisoner failed to "pursue the grievance remedy to conclusion."); see also Hemphill v. Inglese, 359 F. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps."). "Pre-filing exhaustion is mandatory, and the case *must* be dismissed if available administrative remedies were not exhausted." Gonzalez, 702 at 788 (emphasis added).

The purposes of the exhaustion requirement are to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. Bisby v. Garza, 342 F. App'x 969, 971 (5th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 89 (2006)). Thus, a grievance exhausts only claims reasonably within its scope. Johnson v. Johnson, 385 F.3d 503, 517 (5th Cir. 2004) (grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit").

The prisoner grievance system in Louisiana's prisons is "available" for purposes of the 42 U.S.C. § 1997e(a) exhaustion requirement. Ferrington v. La. Dep't of Corrs., 315 F.3d 529, 531–32 (5th Cir. 2002). Louisiana's two-step prisoner grievance system is codified in Louisiana's Corrections

Administrative Remedy Procedure (CARP), La. Rev. Stat. § 15:1711, *et seq.*, and in the administrative regulations of the Department of Public Safety and Corrections. See La. Admin. Code tit. 22, pt. I, § 325.

At the first step, the offender initiates the formal process by completing a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, providing as many facts as possible, and the relief sought. La. Admin. Code tit. 22, pt. I, § 325(G)(1). For purposes of this process, a letter is:

(a) any form of written communication which contains the phrase: "This is a request for administrative remedy" or "ARP", or

(b) request for administrative remedy (form OP-C-13-ARP-1) at those institutions that which to furnish forms for commencement of this process.

*Id.* at § 325(G)(1)(a)(i). This grievance is known as an "ARP." The grievance must be filed with the warden within ninety days of the alleged incident. Id. at § 325(G)(1). The grievance should "identify individuals who are connected with the problem" so as to "provide administrators with a fair opportunity" to address the problems that will form the basis of the suit. Johnson, 385 F.3d at 522. Pursuant to the procedure, the warden of the institution shall respond to the inmate within forty days from the date the request is received, which concludes the first step of the administrative process. See La. Admin. Code tit. 22, pt. I, § 325(J)(1)(a).

If the warden fails to respond or the offender is dissatisfied with the response, then he may proceed to the second step of the administrative process by appealing to the secretary of the Department of Public Safety and Corrections by indicating in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision. Id. at § 325(J)(1)(b)(i). The second step is concluded when a final decision is made by the secretary and the inmate is notified within forty-five days of receipt. Id. at § 325(J)(1)(b)(ii); La. Rev. Stat. § 15:1172(C).

The ARP also includes special provisions governing grievances concerning "emergency or sensitive issues." Specifically, it provides:

H. Emergency or Sensitive Issues

1. In instances where the offender's request is of an emergency or sensitive issue as defined below, the following procedures will apply.

> a. If an offender feels he is subjected to emergency conditions, he must send an emergency request to the shift supervisor. The shift supervisor shall immediately review the request to determine the appropriate corrective action to be taken. All emergency requests shall be documented on an unusual occurrence report (form A-I-4-W-1) by the appropriate staff member.
> ....
>
> b. If the offender believes the complaint is sensitive and that he would be adversely affected if the complaint became known at the institution, he may file the complaint directly with the secretary through the chief of operations/office of adult services (second step response-form OP-C-13-ARP-3). The offender must explain, in writing, his reason for not filing the complaint at the institution.
>
>> i. If the chief of operations/office of adult services agrees that the complaint is sensitive, he shall accept and respond to the complaint at the second step. If he does not agree that the complaint is sensitive, he shall so advise the offender in writing, and return the complaint to the warden's office. The offender shall then have five days from the date the rejection memo is received in the warden's office to submit his request through regular channels (beginning with the first step if his complaint is acceptable for processing in the administrative remedy procedure).
>
> …

La. Admin. Code tit. 22, pt. I, § 325(H).

Only after the completion of both steps, and each element thereof, may the inmate file suit in district court. Woodford, 548 U.S. at 84; La. Admin. Code tit. 22, pt. I, § 325(F)(3)(a)(viii). Furthermore, if the prisoner fails to initiate the grievance process or fails to proceed to the second step of the procedure, he has abandoned his claims and any subsequent suit should be dismissed with prejudice. La. Rev. Stat. § 15:1172(C); see also Johnson v. Louisiana ex rel. Louisiana Dep't of Pub. Safety & Corr., 468 F.3d

278, 281 (5th Cir. 2006); see Jones v. Bock, 549 U.S. 199, 218 (2016) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'" as defined "by the prison grievance process itself.") (quoting Woodford, 548 U.S. at 88).

In support of their motion for summary judgment, defendants submitted the affidavit of Kelly Stone Liebert, the Administrative Coordinator for the Department of Public Safety and Corrections Legal Services Office of the Secretary.[24] Liebert attests that she reviewed the entire administrative proceedings and was unable to locate an administrative remedy procedure filed by Porter in connection with this matter.[25] Defendants also rely on Porter's own admission in his complaint that he did not utilize the prisoner grievance procedure because it was an "emergency situation."[26]

Porter's complaint is dated April 24, 2024, five days after the alleged incident, and was mailed April 29, 2024.[27] Porter admitted in his complaint that he did not present the facts relating to his complaint in the prisoner grievance procedure because it was an "emergency situation."[28] As noted, Porter appears to confirm in his response to the motion for summary judgment that he did not utilize the prisoner grievance procedure because it was an "emergency situation."[29]

First, a prison itself is in the best position to provide its inmates with immediate relief in an emergency situation. Unquestionably, the prison is necessarily able to respond more swiftly to a prison emergency than a federal court, which can act only in the context of a lawsuit – and, even then, only after all parties have been afforded due process and their rights have been carefully considered, weighed, and respected.

---

[24] Rec. Doc. 44-5.
[25] Id.
[26] Rec. Doc. 1 at 3 ¶ II A and D.
[27] Id. at 8–9.
[28] Id. at 3.
[29] Rec. Doc. 47 at 2.

9

Second, "[e]mergencies are not license to carve out new exceptions to the PLRA's exhaustion requirement, an area where our authority is constrained." Calderon v. Hutto, No. 22-20582, 2023 WL 4704116, at *1 (5th Cir. July 24, 2023) (per curiam)  (citing Valentine v. Collier, 978 F.3d 154, 160–62 (5th Cir. 2020). Rather, there is a **specific mechanism** an inmate can use in the event that the situation complained of is an **emergency**. La. Admin. Code tit. 22, pt. I, § 325(H), quoted, *supra*. **Porter failed to use the emergency ARP process** and instead simply filed the instant civil rights action.

The defendants' uncontroverted evidence establishes that Porter did not file any grievance, in accordance with the jail's administrative remedy procedure, explaining the April 19, 2024 incident and requesting any relief. Based on the record, Porter failed to utilize and exhaust the administrative process at the prison before filing this suit. Porter's failure to exhaust his administrative remedies is fatal to his case.

Because defendants' unrebutted evidence establishes that Porter failed to pursue his administrative remedies as required by federal law prior to filing suit, thereby giving the defendants a fair opportunity to consider and possibly resolve the claims without litigation, he failed to exhaust his administrative remedies as required by federal law. This Court has no authority to excuse Porter's failure to exhaust. Ross v. Blake, 578 U.S. 632, 639 (2016). Therefore, Porter's §1983 claims must be dismissed with prejudice as unexhausted.[30]

Porter also asserts state law claims for assault, battery and failure to supervise against the defendants.[31] The exhaustion requirement under the PLRA at Section 1997e(a), however, is directed only to "prison conditions under *section 1983* of this title, or any other Federal law," (emphasis added) and does not apply to Porter's remaining state law claims. Defendants' motion for summary judgment

---

[30] Failure to exhaust "usually results in a dismissal without prejudice," but with prejudice dismissal is warranted when it is "too late" for the plaintiff to exhaust. Dawson Farms, L.L.C. v. Farm Service Agency, 504 F.3d 592, 607 (5th Cir. 2007). Here, defendants are correct that Porter's 90-day window to submit a grievance letter to the Warden briefly setting out the basis for his claim(s) and the relief sought for the alleged incident(s) complained of has indisputably come and gone.
[31] Rec. Doc. 1 at 6.

did not address grounds for dismissal of those claims for failure to exhaust, or any other ground, under state law.

In any event, having dismissed Porter's federal claims, and having considered the statutory provisions of § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness and comity, the Court declines to exercise supplemental jurisdiction over pendent state law claims. Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, Rec. Doc. 44, is **GRANTED** and Porter's § 1983 claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Porter's state law claims against defendants are **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction.

New Orleans, Louisiana, this 8th day of September, 2025.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**